UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

DERRICK SANDERS,

                Plaintiff,

-against-

UNITED STATES OF AMERICA,

                Defendant.

---------------------------------------------------------------- X

**<u>MEMORANDUM
DECISION AND ORDER</u>**

09 Civ. 5265 (BMC)

**COGAN**, District Judge.

Petitioner *pro se* brings this proceeding pursuant to 28 U.S.C. §2255, asserting that his conviction by his guilty plea and the subsequent sentence were obtained as a result of ineffective assistance of counsel. I find that the application is without merit and therefore dismiss the petition.

## BACKGROUND

Petitioner was indicted for violating 18 U.S.C. §922(g)(1) in that he had prior felony convictions and was apprehended in possession of two semi-automatic firearms. A police officer observed him purchasing marijuana and when petitioner was confronted by the police in his vehicle, he voluntarily turned over a semi-automatic weapon that he was carrying. Upon inventorying his vehicle, the police found an additional semi-automatic weapon in the wheel well. Under post-arrest questioning by the police, petitioner confessed that he was a gambler who frequently transported large sums of money from gambling locations and, having been previously robbed, he carried the weapons for self-protection.

At the time of his arrest for the instant offense, petitioner had three prior felony convictions, two for Burglary in the Second Degree and the third for Attempted Criminal Possession of a Controlled Substance in the Third Degree, all under New York State law. These convictions were over 10 years old.

Acting upon advice of counsel, petitioner pled guilty before a Magistrate Judge on July 11, 2008. At the outset of the plea hearing, his counsel raised the point that she and the Government disagreed as to the applicable statutory and guideline sentencing range. She explained that under the Government's view, petitioner's prior drug conviction was a "serious drug offense" which, together with the two burglary convictions, constituted three qualifying felonies, thus triggering armed career offender status under 18 U.S.C. §924(e)(1).[1] This status carried with it a mandatory minimum term of 15 years, which thereby became the guideline range, see United States v. Richardson, 521 F.3d 149, 158 (2d Cir. 2008) (citing U.S.S.G. §5G1.1.(b)), and a maximum term of life. Defense counsel's view, in contrast, was that third degree attempted possession was not a "serious drug offense" as (defined in the statute), and thus petitioner's sentencing exposure was zero to 10 years pursuant to 18 U.S.C. §924(a)(2). Defense counsel specifically inquired as to the Court's view of whether a valid guilty plea could be taken pursuant to Fed. R. Crim. P. 11(a) in light of this disagreement:

> Your Honor, as I was preparing for the guilty plea this afternoon, I came -- I was looking at Rule 11, and what I came across is from what I believe is that Rule 11 requires the Court to inform a defendant in unequivocal terms what the maximum and the mandatories – the maximum mandatory and the minimum mandatory in sentencing may be for a plea to be valid.
>
> THE COURT: Yes.

---

[1] "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)."

2

MS. SAGHIR: In this case, Your Honor, we have a contention as to what guidelines apply in this case, whether the Government is correct, and he's an armed career offender or if he is not. That's been the contention from the beginning.

THE COURT: Yes.

MS. SAGHIR: Now, if Your Honor takes his plea, the Government has prepared a sentencing sheet, which -- in which they've indicated that to the maximum in this case would be life and the minimum would be 15 years. And our position is that he's not an armed career offender and his maximum would be 10 years and minimum would be zero.

THE COURT: Okay.

MS. SAGHIR: Now, whether this would affect Rule 11 in a sense, and will this plea then be a valid plea where the Court is not able to inform Mr. Sanders exactly what the maximum and the minimums in this case would be?

\* \* \*

THE COURT: What I would tell Mr. Sanders is that the Government's position is that the sentence he's exposed to is a minimum of 15 and a maximum of life. And his lawyer may make an argument that a lower sentence should obtain, but nobody can guarantee him that that argument will succeed.

And that because he's on notice that it's the Government's position that this is a 15 to life sentence, if he's -- if the argument fails and he's sentenced to 15 to life, he doesn't get his guilty plea back and he has no right to appeal. That's what you're giving up by pleading guilty. That's what I would tell him.

If he's prepared to plead guilty knowing that if you lose the argument, the plea stands and the sentence is imposed, as described by the Government, and that the – and that those circumstances do not give him a right to have his guilty plea back, and he was prepared to plead guilty under those terms.

Do I understand, Mr. Tierney [AUSA], correctly the Government's position?

MR. TIERNEY: Yes, Your Honor, you do.

THE COURT: Then we can go forward. If he needs to if he chooses to preserve his rights with respect to this and wants to litigate that question fully, then I suppose he needs to decline to plead guilty. ...

MS. SAGHIR: Yes, Your Honor. ...

If we ask the Court to make a determination prior to pleading guilty, if the Court can make a determination as to whether he is an armed career offender or he's

3

not, would that be something that we would do without going to trial? Because we do not want to proceed to trial in this case, but I think it is very important.

The most important question for us, really, Your Honor, is whether the Court would see him as an armed career offender or as not an armed career offender.

\* \* \*

THE COURT: Generally, sentencing litigation occurs after a conviction. Now, I take it, Mr. Tierney, that since the defendant is pleading guilty to the indictment, that he's not surrendering any rights in return for his right to plead guilty. So whatever legal rights he has with respect to the sentencing if he were convicted after trial, he'd have after his guilty plea, correct?

MS. SAGHIR: Right.

MR. TIERNEY: Correct, Your Honor.

\*\*\*

THE COURT: So if that -- so I don't understand what the dilemma is, frankly, if unless you feel there's some chance of him being acquitted.

MS. SAGHIR: No, Your Honor. We do not believe there are any --

THE COURT: Then what -- then I imagine with respect to sentence, he's under the same -- he's in the same position as if he had gone to trial, I would imagine, but really that's not my analysis to make. This is the first time I'm being called upon to think about it. It's yours.

\*\*\*

MS. SAGHIR: Okay. And our position is our position and as we will -- we have stated to the Court on many occasions, and reiterate again that it is zero to ten. And that's our position for sentencing purposes.

THE COURT: That's fine. You can have that position. I've certainly taken guilty pleas where there hasn't been agreement about the sentence.

The point is that the defendant has to be prepared to acknowledge his guilt and proceed with a plea of guilty and surrender his right to trial knowing that the possibility exists that his sentencing argument will lose and that he cannot change his mind about pleading guilty or challenge the legality of the judgment of guilt --

MS. SAGHIR: Right.

THE COURT: -- because he's not happy with the way sentencing decision was made.

4

MS. SAGHIR: That's fine, Your Honor. We're prepared to proceed with the guilty plea.

\*\*\*

THE COURT: We are now at the point at which we need to review the penalties. I know that your lawyer believes that there is a good argument for a more lenient penalty, but so that you make this guilty plea with your eyes open to the worst possible scenario, I'm going to advise you of the maximum penalties from the prosecution's perspective. Do you understand what I'm saying now?

THE DEFENDANT: Yes.

THE COURT: According to the prosecutor, because of your prior record, and that's the only issue at stake, the statute you're accused of violating requires the judge to sentence you to prison for 15 years and authorizes him to sentence you to prison for the rest of your life.

If the prosecution's understanding and arguments about your prior record are accepted by the Court, that is the sentence. Are we clear on that?

THE DEFENDANT: Yes.

\*\*\*

THE COURT: Even if your lawyer is right, the judge will still be authorized to impose a substantial prison sentence and a term of supervised release. Is that clear?

THE DEFENDANT: Yes.

In the event, it transpired that defense counsel, not the Government, was right about the statutory sentencing range, but this was not immediately apparent. In the Presentence Investigation Report, the Probation Department took the position that the attempted possession conviction constituted a "serious drug offense" and therefore concluded that petitioner was in fact subject to the 15 year mandatory minimum. The Government continued to adhere to that position and advocated for a 15 year mandatory minimum. However, prior to sentencing, on August 15, 2008, the Second Circuit decided United States v. Darden, 539 F.3d 116 (2d Cir.

5

2008), holding that the state statute under which petitioner had been convicted did not constitute a "serious drug offense."[2] The Probation Department issued an addendum amending the Presentence Investigation Report, and the Government conceded that in light of Darden, petitioner no longer faced a mandatory minimum of 15 years to life, but zero to 10 years.

The effect of Darden on petitioner's upcoming sentence was dramatic. It not only eliminated the mandatory 15 year minimum with a maximum of life, substituting instead a statutory range of zero to 10 years (as defense counsel had advocated), but it changed petitioner's guideline range from 135-168 months (putting aside the mandatory minimum, which would have raised it to 180 months) to 10-16 months. This was because his three felony convictions were more than 15 years old, and while the age of convictions does not affect the applicability of the armed violent offender statute (the applicability of which itself triggers a substantial guidelines increase), such convictions are excluded from the criminal history guideline calculations. See U.S.S.G §4A1.2(e). He therefore dropped from a Criminal History Category IV to Category I.

At sentencing, the Government moved for an above-guidelines sentence based on its view that the guidelines understated petitioner's criminal history, but I rejected that argument. I sentenced petitioner to a sentence within his guideline range, a split sentence of seven months custody followed by two years of supervised release with a special condition of seven months

---

[2] More specifically, Darden dealt with the issue of whether a state drug conviction which carried a possible 10 year sentence at the time it was imposed, thus making it a "serious drug offense" under the federal statute, retained that status when, at the time of defendant's subsequent federal sentencing, the state had lowered the penalty for that offense below 10 years. See id. at 126-27 Darden held that the state conviction should be tested at the time of federal sentencing, and thus the drug conviction could not be considered a serious drug offense because it no longer had a 10 year term.

home confinement.[3] Part of my consideration for doing so was that petitioner had a medical hardship; he needs to be on dialysis three times per week.

Petitioner was discharged from custody on August 7, 2009, and is presently serving the home confinement portion of his sentence.

## DISCUSSION

Petitioner correctly acknowledges that the familiar standard for resolving claims of ineffective assistance of counsel is the two-step inquiry set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). To establish a claim under the Strickland standard, "a defendant must show that counsel's representation 'fell below the objective standard of reasonableness' based on 'prevailing professional norms' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Eze v. Senkowski, 321 F.3d 110, 123 (quoting Strickland, 466 U.S. at 688, 694). When a conviction is secured by way of a guilty plea, the second Strickland factor is modified to require a defendant to demonstrate that but for counsel's unprofessional errors, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370 (1985); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992).

Although petitioner has articulated his claim as one for ineffective assistance of counsel under Strickland, a review of his argument shows that that is not the only basis for his claim. He equally faults the Court for failing to adequately advise him of his sentencing exposure. The problem he describes is that his guilty plea allocution failed to comply with Fed. R. Crim. P. 11(a), which he asserts "requires a court to advise a defendant, in no uncertain terms, of the

---

[3] Petitioner asserts that his guilty plea before the Magistrate Judge was never accepted by this Court. His sentencing transcript shows this assertion to be incorrect.

7

minimum and maximum terms applicable." He accuses the Magistrate Judge of providing him a "mix of information" through which he did not know what his sentencing exposure really was.

To the extent petitioner claims a defect in the administration of his plea proceeding, the portions of the transcript set forth above require rejection of that argument. There was simply no other way the Magistrate Judge could have explained petitioner's maximum and minimum exposure to him. The Magistrate Judge clearly set out both what the Government's position and his counsel's were as to his exposure. Most importantly, the Magistrate Judge made it clear that if petitioner wanted to plead guilty, he was going to have to do it without knowing which position would ultimately prevail. Petitioner gave the express answer that he understood the dispute and was willing to take the risk of a 15 year mandatory minimum.

The only alternative would have been for the Magistrate Judge to definitively resolve the Darden issue as a prelude to taking petitioner's plea. Rule 11 neither required, and indeed probably did not permit, the Court to do that. However, that appears to be what petitioner is contending should have happened. His argument, in essence, is that if he had known that he was in fact facing a zero to 10 year statutory range and a 10-16 month guideline range, he would not have pled guilty. But Darden had not been decided. The Government was contending, and had contended with some success in other courts prior to Darden, see United States v. Hinojosa, 349 F.3d 200, 205 (5th Cir. 2003); United States v. Williams, 57 Fed. App'x. 553 (4th Cir. 2003), that petitioner's attempted possession charge was a serious drug offense. But for the later grace of the Second Circuit in Darden, it would have been error under Rule 11 for the Magistrate Judge to advise petitioner that his maximum statutory exposure was zero to 10 years and his guideline range was 10-16 months. Faced with a Government argument to the contrary, that was simply

8

not the case at the time the plea was taken. The plea proceeding complied with Rule 11 in all respects.

As to his attorney, there is of course an irony in petitioner's accusation of ineffective assistance in light of her correct prediction of the result later reached in Darden. Thus, rather than criticizing Petitioner's complaint about his attorney's analysis of the case, petitioner appears to be asserting that she did not adequately advise him of the guideline range, and that if she had, he would have gone to trial. Specifically, he contends that had he gone to trial and been convicted, his guideline range would have been 15-21 months (as a result of loss of credit for acceptance of responsibility), instead of the 10-15 months he faced at sentencing, and if he knew he had that choice, he would have gone to trial.

The problem is that when petitioner pled guilty, he did not have that choice, and the choice that he had, and voluntarily made, renders his current assertion patently incredible. Even assuming that his attorney did not advise him at or before his guilty plea, in the event that the 15 year mandatory minimum was subsequently determined not to apply, of the guideline difference between going to trial and pleading guilty, it would be irrational for him to have elected to go to trial, and logically contrary to the decision that he made to plead guilty. As the plea transcript reflects, petitioner knew that the Government was urging a 15 year mandatory minimum sentence and he nevertheless voluntarily chose to plead guilty. If petitioner was ever going to take a shot at an acquittal and go to trial, it was then, to avoid that exposure. Yet petitioner now asserts that if he knew both that he faced the possibility of a 15 year mandatory minimum, and that the alternative was a 15-21 month guideline range as opposed to a 10-16 month guideline range, he would have gone to trial. It simply makes no sense that the six month difference with

9

no mandatory minimum would have caused him to elect trial, when the possibility of an acquittal to avoid a 15 year mandatory minimum did not cause him to elect trial.

Petitioner cannot pick and choose disparate elements of the scenarios he faced on the date of his plea and the date of his sentence. He is asking me to review the effectiveness of his attorney's advice at sentencing as if that was the date on which he pled guilty. It wasn't. On the day of his sentencing, he had no option to proceed to trial, having waived it when he pled guilty. Since, at the time of his plea, he was willing to forego a trial notwithstanding his exposure to a 15 year mandatory sentence, he cannot colorably contend that he would have pled not guilty in order to risk a six month increase in his guideline range.

Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b). In Chang v. U.S., 250 F.3d 79, 85-86 (2d Cir. 2001), the Second Circuit made clear that a Court may appropriately rule on a §2255 motion without a testimonial hearing where the documentary record renders a testimonial hearing unnecessary.

Here, petitioner's claim is sufficiently incredible that no hearing is required. His attorney got it just right. She told him, when he pled guilty, that he faced 15 years to life if she was wrong on the law, and zero to 10 years if she was right. That was all that mattered at the time. It did not fall below an objective standard of reasonableness for her not to stress that if she was right, then, in addition, there was a six month guideline difference between going to trial and not going to trial. The issue was the mandatory 15 years, not the immaterial six months. And to merely assert in conclusory form that petitioner would have elected to go trial had she told him about the contextually meaningless six month difference is not sufficiently credible to raise a viable constitutional claim. Neither prong of Strickland has been met.

## CONCLUSION

Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. U.S., 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
  December 8, 2009